IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| ANGELA GABBARD, | : | Case No. 1:23-cv-419 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| BUTLER COUNTY, OHIO, et al., | : | |
| Defendants. | : | |

## ORDER AND OPINION

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (Doc. 25) and Defendants' Motion for Summary Judgment (Doc. 26). Both matters have been fully briefed (*See* Docs. 25, 26, 27, 29, 31, 32). While Plaintiff requests oral argument, the Court does not find oral argument "essential to the fair resolution" of the motion. S.D. Ohio Civ. R. 7.1(b)(2). Thus, the matter is ripe for review. For the reasons below, Plaintiff's Motion for Partial Summary Judgment (Doc. 25) is **GRANTED IN PART AND DENIED IN PART**, and Defendants' Motion for Summary Judgment (Doc. 26) is **GRANTED IN PART AND DENIED IN PART**.

## FACTS

Plaintiff Angela Gabbard was employed as a Civil Clerk for the Butler County Area Courts ("BCAC"). (Employee Information, Doc. 17-2, Pg. ID 215.) In September 2021, Plaintiff learned that she was pregnant. (Gabbard Dep., Doc. 17-1, Pg. ID 101.) Plaintiff notified her supervisor, Tammy Brown, of her pregnancy in October 2021. (*Id.* at

Pg. ID 102; Brown Dep., Doc. 21-1, Pg. ID 843.) In April 2022, Julie Baldwin, the BCAC's Administrative Assistant responsible for managing employee leave, reached out to Plaintiff to learn more about Plaintiff's potential leave. (Baldwin Email, Doc. 17-2, Pg. ID 288.)

## I. The BCAC Employee Policies

Three BCAC employee leave policies are relevant to Plaintiff's claims: the Sick Leave Policy, the Leave Without Pay Policy, and the Unpaid Pregnancy-Related Leave Policy.

The Sick Leave Policy permits mothers to use accrued sick leave for a period of disability from pregnancy and childbirth. (Sick Leave Policy, Doc. 18-2, Pg. ID 510-11.) If an employee wishes to extend their leave to care for the child, they must request additional leave under the Leave Without Pay or the Family Medical Leave Act ("FMLA") policies. (*Id.*)

The Leave Without Pay Policy permits an employee to request unpaid leave for any personal reason. (Leave Without Pay Policy, Doc. 17-2, Pg. ID 273.) The policy specifically acknowledges that an employee may request unpaid leave for childcare following birth. (*Id.*) Leave is approved at the discretion of the appointing authority. (*Id.*)

There is also an alternative to the Leave Without Pay Policy that applies to employees seeking to take additional leave for childcare. (Unpaid Pregnancy-Related Leave, Doc. 17-2, Pg. ID 271.) After exhausting accrued sick or vacation leave, the Unpaid Pregnancy-Related Leave Policy allows an employee to request leave for pregnancy-related purposes. (*Id.*) The policy includes the additional requirement that, within 30 days

2

of childbirth, the employee must provide a written medical certification confirming her inability to work. (*Id.*) Failure to provide the medical certification is considered a resignation. (*Id.*)

## II. Plaintiff's Leave

On May 11, 2022, Baldwin provided Plaintiff with various FMLA documents. (WH-380-E, Doc. 17-2, Pg. ID 290-93; WH-381, Doc. 17-2, Pg. ID 294-97.) Among the documents was a letter stating the WH-380-E form ("medical certification") must be completed and returned within 30 days; otherwise, Plaintiff's leave would be denied, and Plaintiff would face disciplinary action. (Administrative Letter, Doc. 17-2, Pg. ID 289.) The medical certification required Plaintiff to fill out medical information and also needed to be signed by a health care provider. (WH-380-E, Doc. 17-2, Pg. ID 290-93.)

Plaintiff's last day of work was May 26, 2022. (Gabbard Dep., Doc. 17-1, Pg. ID 106.) She gave birth on June 1, 2022. (*Id.* at Pg. ID 131.) Plaintiff dropped off a medical certification to her physician for completion on June 9, 2022. (Text Messages, Doc. 17-2, Pg. ID 307.) Plaintiff's physician indicated that he would complete the medical certification and send it to the BCAC. (Gabbard Dep., Doc. 17-1, Pg. ID 132.) Defendants maintain that the medical certification was due the following day on June 10, 2022, which was 30 days after Plaintiff received the form. (Baldwin Dep., Doc. 19-1, Pg. ID 683.) The medical certification was not returned to Defendants by this date, and Plaintiff continued taking leave. (Lovelace Dep., Doc. 20-1, Pg. ID 783.) In July 2022, Brown texted Plaintiff, asking when she would return to work. (Text Messages, Doc. 17-2, Pg. ID 307.) Plaintiff responded that she would return in September. (*Id.*)

3

On August 2, 2022, Linda Lovelace, a Court Administrator, sent Plaintiff a letter stating that the BCAC had accepted Plaintiff's resignation. (Termination Letter, Doc. 17-2, Pg. ID 310-11.) The letter states that Plaintiff voluntarily resigned because of several factors, including cleaning out her desk before taking leave, failing to return FMLA paperwork, and failing to follow BCAC procedure by not providing a written request and medical certification to determine the length of Plaintiff's absence. *Id.* Plaintiff's resignation was further effectuated by an order of Defendant Judge Robert H. Lyons', the BCAC's administrative judge, which recognized Plaintiff's resignation. (Court Order, Doc. 17-2, Pg. ID 309.) Eight days after Plaintiff's resignation, the BCAC received Plaintiff's medical certification. (Lovelace Dep., Doc. 20-1, Pg. ID 786.)

## PROCEDURAL HISTORY

On July 7, 2023, Plaintiff filed her Complaint against Defendants Butler County, Ohio; Judges Robert Lyons, Kevin McDonough, and Courtney Caparella-Kraemer; and the Butler County Commissioners, all appearing in their official capacities as elected representatives of Butler County, Ohio. (Compl., Doc. 1, ¶¶ 8-12.) Plaintiff brought claims for Pregnancy Discrimination under federal and state law, FMLA Interference under federal law, and Retaliation under federal and state law. (*See id.* at ¶¶ 38-60.) On August 23, 2023, Plaintiff stipulated to the dismissal of Defendants Butler County and the Butler County Board of Commissioners. (Stipulation, Doc. 8, Pg. ID 31.) On August 12, 2024, Plaintiff filed her Motion for Partial Summary Judgment on her Pregnancy Discrimination and FMLA Interference claims. (*See* Plaintiff's Motion, Doc. 25.) The following day, the remaining Defendants filed their Motion for Summary Judgment on

4

all of Plaintiff's claims. (*See* Defendants' Motion, Doc. 26.)

## LAW & ANALYSIS

When there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law, the district court shall grant summary judgment. Fed. R. Civ. P. 56(a). The moving party has the burden to conclusively show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If the moving party meets that burden, then it becomes the nonmoving party's responsibility to point to specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A court is under no obligation to search the record for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996).

Moreover, a "mere scintilla" of evidence in support of the nonmoving party's position is not enough to avoid summary judgment. *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005). Rather, to preclude summary judgment, the nonmoving party must put forward probative evidence on which a jury could reasonably reach a verdict in that party's favor. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy*, 39 F.3d at 1347. If the nonmoving party fails to make the necessary showing for an element on which it has the burden of proof, then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The Court will analyze whether summary judgment is appropriate on each of Plaintiff's claims in turn.

### I. Official Capacity

As an initial matter, Plaintiff brings her claims against the three remaining

5

defendants in their official capacities. (Compl., Doc. 1.) As they appear in their official capacity, each remaining Defendant represents the BCAC. *See Ward v. City of Norwalk*, 640 Fed. App'x. 462, 464-65 (6th Cir. 2016) (finding that a lawsuit against Ohio municipal court judges in their official capacities is treated as a suit against the municipal court). Thus, the inclusion of more than one judge in this lawsuit is redundant. *See Washington v. State*, No. 3:23-CV-301, 2023 U.S. Dist. LEXIS 91715, at *13-14 (M.D. Tenn. May 25, 2023); *Rayos v. Smith*, No. 1:15-CV-1153, 2018 U.S. Dist. LEXIS 200158, at *2 (W.D. Mich. Nov. 27, 2018) (finding that claims against multiple defendants in their official capacities "are functionally claims against the same entity"). As Defendant Judge Robert Lyons is the BCAC's Administrative Judge and has the sole authority to make employment decisions, he is the only proper defendant. Defendants Judge Kevin McDonough and Judge Courtney Caparella-Kraemer are hereby dismissed from this action.

## II.  Pregnancy Discrimination

Count I of Plaintiff's Complaint alleges that she experienced pregnancy discrimination under the Pregnancy Discrimination Acts ("PDA") of 42 U.S.C. § 2000e-5 and O.R.C. § 4112.02. (Compl., Doc. 1, ¶¶ 38-44.) Plaintiff's "federal and state pregnancy discrimination claims are evaluated generally under the same substantive standards." *Tysinger v. Police Dep't*, 463 F.3d 569, 572 (6th Cir. 2006) (comparing 42 U.S.C. § 2000e and O.R.C. § 4112.02). Both Plaintiff and Defendants move for summary judgment on Plaintiff's pregnancy discrimination claim. (*See* Plaintiff's Motion, Doc. 25; Defendants' Motion, Doc. 26.)

"Under the PDA provisions of Title VII, discrimination of or on the basis of

pregnancy, childbirth, or related medical conditions is defined as a kind of sex discrimination and is prohibited." *Tysinger*, 463 F.3d at 572 (citing 42 U.S.C. § 2000e(k)). A plaintiff can succeed on her discrimination claim under one of two frameworks. The first framework applies when a plaintiff brings direct evidence of discriminatory intent. *Bent-Crumbly v. Brennan*, 799 Fed. App'x. 342, 345 (6th Cir. 2020) "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). A facially discriminatory employment policy is one example of direct evidence. *Million v. Warren Cty.*, 440 F. Supp. 3d 859, 869 (S.D. Ohio 2020). If the plaintiff succeeds and establishes a discriminatory gender policy, "the case will turn on whether such overt disparate treatment is for some reason justified under Title VII." *Reed v. County of Casey*, 184 F.3d 597, 599 (6th Cir. 1999).

Alternatively, when a plaintiff relies on circumstantial evidence of discrimination, then the *McDonnell Douglas* burden shifting framework applies. *Asmo v. Keane, Inc.*, 471 F.3d 588, 592 (6th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). At step one, an employee must make a prima facie showing of pregnancy discrimination by demonstrating: "(1) [the plaintiff] was pregnant, (2) she was qualified for her job, (3) she was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment decision." *Id.* at 574. If the employee presents a prima facie case, the "burden shifts to the employer to provide a legitimate, nondiscriminatory reason for its adverse employment decision." *Id.* at 792. Assuming the employer is successful, the burden shifts back to the employee who must then show that

the employer's reason was a pretext for discrimination. *Id.*

Here, Plaintiff moves for summary judgment on her pregnancy discrimination claim by arguing that the BCAC's Unpaid Pregnancy-Related Leave Policy facially violates the PDA. (Plaintiff's Motion, Doc. 25, Pg. ID 950.) Defendants disagree, arguing that Plaintiff lacks direct evidence because the policy is not discriminatory. (Defendants' Motion, Doc. 26, Pg. ID 978-79.) The Court will first examine whether the BCAC's Unpaid Pregnancy-Related Leave Policy is facially discriminatory.

"A leave policy that facially discriminates on the basis of pregnancy constitutes direct evidence of discrimination." *Huffman v. Speedway LLC*, 21 F. Supp. 3d 872, 876 (E.D. Mich. 2014); *see also Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Relevant to the analysis here, the BCAC maintained two policies: the Leave Without Pay Policy and the Unpaid Pregnancy-Related Leave Policy. Both policies may apply to employees on leave who have exhausted their accrued sick time. (Unpaid Pregnancy-Related Leave, Doc. 17-2, Pg. ID 271; Leave Without Pay, Doc. 17-2, Pg. ID 273.) Specifically, the Leave Without Pay Policy applies to all employees seeking unpaid leave and simply requires the approval of the appointing authority. (Leave Without Pay, Doc. 17-2, Pg. ID 273.) The Unpaid Pregnancy-Related Leave Policy, however, applies only to pregnant women and imposes an additional requirement not included in the Leave Without Pay Policy. (Unpaid Pregnancy-Related Leave, Doc. 17-2, Pg. ID 271.) This additional burden requires that—within 30 days of the termination of pregnancy—the employee provide a written statement from their physician stating when they may return to work. (*Id.*) Conversely, there is no such requirement for employees under the Leave Without Pay

8

Policy. (Leave Without Pay, Doc. 17-2, Pg. ID 273.) Since the BCAC's Unpaid Pregnancy-Related Leave Policy places an additional burden for leave on pregnant employees, the policy is facially discriminatory under the PDA.

Defendants argue that the Unpaid Pregnancy-Related Leave Policy is not discriminatory because the Sick Leave Policy shares a similar restriction. (Defendants' Response, Doc. 27, Pg. ID 1010.) The Sick Leave Policy outlines the conditions for which an employee can use accrued sick leave and still receive pay while on leave. (*See* Sick Leave, Doc. 18-2, Pg. ID 510-15.) Specifically, Defendants point to the Sick Leave Policy's requirement that a doctor's note is needed when an employee has been absent for more than three consecutive days. (*Id.* at Pg. ID 511.) This comparison is unpersuasive. The Sick Leave Policy dictates an employee's conduct while on *paid* sick leave. (*Id.* at Pg. ID 510.) Once that leave is exhausted, the employee's leave is then governed by either the Leave Without Pay Policy or, if the employee is pregnant, the Unpaid Pregnancy-Related Leave Policy. (Leave Without Pay, Doc. 17-2, Pg. ID 273; Unpaid Pregnancy-Related Leave, Doc. 17-2, Pg. ID 271.) Thus, the Sick Leave Policy is an inadequate comparison.

Having brought direct evidence of pregnancy discrimination, the analysis now turns on whether the disparate impact of the Unpaid Pregnancy-Related Leave Policy is justified under Title VII. *See Reed*, 184 F.3d at 599. "Title VII permits overt discrimination in two situations: (1) if the disparate treatment is part of a legally permissible affirmative action program, or (2) it is based on a bona fide occupation qualification." *Million v. Warren Cty.*, 856 Fed. App'x. 1, 11 (6th Cir. 2021) (quotations omitted). Defendants, however, fail to put forth any affirmative action program or bona fide occupation

9

qualification that would permit the Unpaid Pregnancy-Related Leave Policy's overt discrimination. Accordingly, Plaintiff is entitled to summary judgment on her pregnancy discrimination claim.

### III. FMLA Interference

Plaintiff's second claim is for FMLA interference. (Compl., Doc. 1, ¶¶ 46-53.) "The FMLA enables employees covered by the Act to take up to twelve weeks of leave per year for various specified purposes." *Bryson v. Regis Corp.*, 498 F.3d 561, 569 (6th Cir. 2007). At the end of an employee's leave, she must be reinstated to her position or a different position with equal pay and employment conditions. *Id.* at 569-70. To make a prima facie showing for FMLA interference, a plaintiff must demonstrate that (1) she was an eligible employee; (2) the defendant was a covered employer; (3) that plaintiff was entitled to FMLA leave; (4) the plaintiff gave the defendant notice of intent to take leave; and (5) the defendant denied or interfered with the plaintiff's benefits to which she was entitled. *Render v. FCA US. LLC*, 53 F.4th 905, 914 (6th Cir. 2022).

Similar to Plaintiff's pregnancy discrimination claim, the *McDonnell Douglas* framework applies if Plaintiff relies on circumstantial evidence. *Id.* at 919. If Plaintiff has direct evidence of FMLA interference, however, then *McDonnell Douglas* burden shifting is inapplicable. *Id.* Direct evidence in this context is satisfied if Plaintiff establishes that the BCAC denied her FMLA benefits to which she was entitled. *Id.* Both Plaintiff and Defendants moved for summary judgment on Plaintiff's FMLA interference claim. (*See* Plaintiff's Motion, Doc. 25; Defendants' Motion, Doc. 26.) Defendants concede that Plaintiff has satisfied the first four elements. (Defendants' Motion, Doc. 26, Pg. ID 979.)

Thus, the only dispute is whether the BCAC denied Plaintiff FMLA benefits to which she was entitled.

The BCAC had a standard requirement that an employee on unpaid pregnancy leave must provide, within 30 days of the termination of pregnancy, a medical certification from her physician outlining the timeframe she is unable to work. (Unpaid Pregnancy-Related Leave, Doc. 17-2, Pg. ID 271.) Plaintiff failed to provide this medical certification within 30 days of childbirth and was accordingly terminated. (Court Order, Doc. 17-2, Pg. ID 309.) Plaintiff argues that by denying her leave for failing to provide her medical certification, the BCAC denied Plaintiff's FMLA benefits to which she was entitled. (Plaintiff's Motion, Doc. 25, Pg. ID 945.) The FMLA states than an employer may require a medical certification for FMLA leave when the employee: (1) has a serious health condition rendering the employee unable to perform her job functions; (2) in order to care for a spouse, child, or parent who has a serious health condition; or (3) to care for a family servicemember. 29 U.S.C. § 2613(a); 29 U.S.C. § 2612(a); 29 C.F.R. § 825.305(a).

Plaintiff argues that she took leave to bond with her child and therefore the BCAC was precluded from requiring a medical certification. (Notice of Eligibility & Rights and Responsibilities; Doc. 17-2, Pg. ID 294; Lovelace Dep., Doc. 20-1, Pg. ID 772-73.) In support, Plaintiff notes, among other things, that the FMLA forms Plaintiff received from the BCAC stated that Plaintiff's leave was for the birth of a child, not a serious health condition. (Notice of Eligibility & Rights and Responsibilities, Doc. 17-2, Pg. ID 294.) Plaintiff also notes that Lovelace testified that Plaintiff took leave for childbirth. (Lovelace Dep., Doc. 20-1, Pg. ID 803.)

11

Defendants alternatively argue that at least the initial phase of Plaintiff's leave was for a serious health condition. (Defendants' Response, Doc. 27, Pg. ID 1015-17.) Under the FMLA, pregnancy is not a "per se" serious health condition. *Whitaker v. Bosch Braking Sys. Div.*, 180 F. Supp. 2d 922, 928 (W.D. Mich. 2001). Rather, "[w]hether an employee suffers from a serious health condition under the FMLA is a question of law for the Court." *Helmick v. Solid Waste Auth. of Cent. Ohio*, No. 2:07-CV-912, 2009 U.S. Dist. LEXIS 19301, at *17 (S.D. Ohio Mar. 10, 2009). The FMLA defines a "serious health condition" as a physical condition that involves inpatient care in a medical facility or continuing treatment by a health care provider. 29 U.S.C. § 2611(11). Here, Plaintiff received inpatient treatment for her pregnancy and continued treatments by her doctor. (Completed Medical Certification, Doc. 17-2, Pg. ID 314-15.) Thus, under statutory law, at least a portion of Plaintiff's leave was for a serious health condition that prevented her from performing her employee functions.

This conclusion also finds support in the regulatory framework. Specifically, 29 C.F.R. § 825.115(b) states that "any period of incapacity due to pregnancy, or for prenatal care" can qualify as a serious health condition. *Huffman v. Speedway LLC*, 621 Fed. App'x 792, 798 (6th Cir. 2015). Plaintiff's physician specifically stated that he expected Plaintiff to be incapacitated from June 1, 2022, through July 13, 2022. (Certification of Health Care Provider, Doc. 17-2, Pg. ID 315.) Therefore, despite Lovelace's testimony, under a plain reading of both statutory and regulatory definitions, Plaintiff's leave was for a serious health condition and the BCAC could require a medical certification.

The Court now turns to Defendants' sovereign immunity defense. (Defendants'

12

Reply, Doc. 32, Pg. ID 1148.) The Supreme Court has held that suits against states for money damages under the FMLA's serious health condition provision are barred by sovereign immunity. *Diaz v. Mich. Dep't of Corr.*, 703, F.3d 956, 961 (6th Cir. 2013) (citing *Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 33 (2012)). Accordingly, as even initially raised and admitted by Plaintiff (Plaintiff's Response, Doc. 29, Pg. ID 1087), if her leave was for her own serious health condition, the Court lacks subject matter jurisdiction over Plaintiff's FMLA interference claim for money damages. *Sherman v. Pub. Emps. Ret. Sys.*, No. 2:22-CV-4161, 2023 U.S. Dist. LEXIS 174092, at *15 (S.D. Ohio Sept. 28, 2023). Thus, having determined that Plaintiff's leave was for a serious health condition, Plaintiff's FMLA claims for monetary damages are barred.

Plaintiff argues for summary judgment under several different theories. Despite the Eleventh Amendment barring Plaintiff's FMLA claims for monetary damages, it "does not bar suits for equitable, prospective relief, such as reinstatement." *Diaz*, 703 F.3d at 964. As Plaintiff seeks reinstatement to her former position in addition to monetary damages, the Court will address each of Plaintiff's arguments as to her equitable relief in turn. (Compl., Doc. 1, Pg. ID 9.)

Plaintiff contends that her termination for failing to provide a medical certification is unlawful because the Unpaid Pregnancy-Related Leave Policy is more stringent than the FMLA's requirements. (Plaintiff's Motion, Doc. 25, Pg. ID 945.) This argument is unpersuasive. First, Plaintiff's position relies on the holding of *Cavin v. Honda of America Manufacturing, Inc.*, 346 F.3d 713, 720 (6th Cir. 2003). In *Cavin*, the Sixth Circuit concluded that "employers cannot deny FMLA relief for failure to comply with their internal notice

13

requirements." *Id.* at 723. The language of 29 C.F.R. § 825.302(d) which underlies *Cavin*'s holding, however, is no longer in effect. *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 614 (6th Cir. 2013). The regulation now states that "[w]here an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied." 29 C.F.R. § 825.302(d). By failing to provide a medical certification in compliance with the BCAC's usual procedural requirement, Plaintiff must have had an unusual circumstance to justify her failure; otherwise, the BCAC's denial is proper. "The FMLA regulations associate unusual circumstances with communication issues such as the employee's inability to reach a supervisor or designated employee." *Meeks v. Norfolk S. Ry. Co.*, No. 1:20-CV-331, 2023 U.S. Dist. LEXIS 52442, at *26-27 (S.D. Ohio Mar. 27, 2024) (quotations omitted).

Here, there is no evidence that Plaintiff could not provide her medical certification to the BCAC due to a communication issue outside of her own control. Plaintiff gave the medical certification to her physician to be completed on June 9, 2022, one day before it was due to the BCAC. (Text Messages, Doc. 17-2, Pg. ID 307; Baldwin Dep., Doc. 19-1, Pg. ID 683.) Then, the BCAC did not receive the certification until August 10, 2022. (Certification of Health Care Provider; Doc. 17-2, Pg. ID 313; Lovelace Dep., Doc. 20-1, Pg. ID 786.) Although Plaintiff did provide the medical certification to her physician before the deadline, this is not the type of unusual circumstance contemplated in 29 C.F.R. § 825.302(d). Plaintiff's reliance on a third party is not compelling. Moreover, Plaintiff does not provide evidence as to why she could not have provided the certification earlier

14

or followed up with her physician to ensure timely delivery. Thus, the BCAC did not violate the FMLA by enforcing its Unpaid Pregnancy-Leave Policy.

Plaintiff next seeks to establish that the Unpaid Pregnancy-Related Leave Policy violates the FMLA because it has no notice provision. (Plaintiff's Reply, Doc. 31, Pg. ID 1124.) C.F.R. § 825.305(a) states that "[a]n employer must give notice of a requirement for certification each time a certification is required; such notice must be written notice whenever required by § 825.300(c)." Employers shall also provide a written notice explaining the obligations of an employee and any consequences for failing to meet the obligations. 29 C.F.R. § 825.300(c)(1). On May 11, 2022, Plaintiff received a letter from the BCAC stating that the attached medical certification form must be completed and returned, or Plaintiff's leave will be denied, and disciplinary action will be initiated. (Administrative Letter, Doc. 17-2, Pg. ID 289.) The Court finds that the text of this letter provided sufficient notice to Plaintiff under the FMLA.

Plaintiff further contends that she was wrongfully declined her FMLA benefits because the BCAC did not provide notice that her leave was being denied. (Plaintiff's Motion, Doc. 25, Pg. ID 949.) 29 C.F.R. § 825.300(d)(1) requires that "[w]hen the employer has enough information to determine whether the leave is being taken for a FMLA-qualifying reason (e.g., after receiving a certification), the employer must notify the employee whether the leave will be designated and will be counted as FMLA leave." Plaintiff, however, did not provide her medical certification until long after the deadline. The BCAC therefore did not have enough information to determine whether Plaintiff's leave was for a FMLA-qualifying reason to trigger the notice requirement.

15

Plaintiff next argues that even if the BCAC could require medical certification for her pregnancy leave, that she was also simultaneously eligible for leave to bond with her child and the FMLA does not require a certification for bonding. (Plaintiff's Response, Doc. 29, Pg. ID 1092.) Although parents are entitled to FMLA leave to be with their newborn child, 29 C.F.R. 825.120(a)(2), Plaintiff provides no appropriate authority supporting that that an employee can be on FMLA leave simultaneously for more than one reason. Plaintiff cites to 29 C.F.R. 825.300(b)(3), but nothing in that regulatory provision backs Plaintiff's claim. Instead, it states that an employee does not have to notify her employer when a subsequent need for FMLA develops while already on leave. 29 C.F.R. 825.300(b)(3). Accordingly, this argument is also not well taken.

Overall, the BCAC's enforcement of its Unpaid Pregnancy-Leave Policy did not interfere with Plaintiff's FMLA protections. Plaintiff's arguments in opposition have all been unpersuasive. Thus, Defendants are entitled to summary judgment on Plaintiff's FMLA interference claim.

Plaintiff also moves for liquidated damages on its FMLA interference claim. (Plaintiff's Motion, Doc. 25, Pg. ID 948.) "If an employer violates an employee's rights under the FMLA, the employer is liable for . . . liquidated damages or 'double damages' equal to the compensatory damages plus the interest." *Chenoweth v. Wal-Mart Stores, Inc.*, 159 F. Supp. 2d 1032, 1037 (S.D. Ohio 2001). Here, the BCAC did not interfere with Plaintiff's FMLA rights, so Plaintiff is not entitled to liquidated damages.

### IV. Retaliation

Defendants move for summary judgment on Plaintiff's retaliation claim.

16

(Defendants' Motion, Doc. 26, Pg. ID 1001.) Plaintiff, however, fails to address Defendants' arguments in her Response. (*See* Plaintiff's Response, Doc. 29.) "[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 Fed. App'x. 368, 372 (6th Cir. 2013). Accordingly, Defendants are entitled to summary judgment on Plaintiff's abandoned retaliation claim.

## CONCLUSION

Based on the foregoing, the Court **ORDERS** the following:

1. Defendants Judge Kevin McDonough and Judge Courtney Caparella-Kraemer are **DISMISSED**;

2. Plaintiff's Motion for Partial Summary Judgment (Doc. 25) is **GRANTED IN PART AND DENIED IN PART**;

3. Defendants' Motion for Summary Judgment (Doc. 26) is **GRANTED IN PART AND DENIED IN PART**;

4. Summary Judgment is **ENTERED** in favor of Plaintiff on her claim for pregnancy discrimination;

5. Summary Judgment is **ENTERED** in favor of Defendants on Plaintiff's claim for FMLA interference; and

6. Summary Judgment is **ENTERED** in favor of Defendants on Plaintiff's retaliation claim.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: *Matthew W. McFarland*

JUDGE MATTHEW W. McFARLAND

18